# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SHAWN GONZALEZ,

        Plaintiff,

 v.

GEORGE YEPES, FREDERICK DIRGA, JUSTIN LATHROP, and MARK LEMIEUX,

        Defendants.

CASE NO. 3:19-cv-00267 (CSH)

SEPTEMBER 9, 2019

## RULING ON AMENDED COMPLAINT

**Haight, Senior District Judge:**

On February 25, 2019, Plaintiff Shawn Gonzalez, a convicted prisoner currently incarcerated at the Cheshire Correctional Center in Connecticut, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against four Middletown police officials in their individual and official capacities: Sergeant George Yepes, Detective Frederick Dirga, Detective Justin Lathrop, and Detective Mark Lemieux. Doc. 1 ("Compl.") at 2-3. Gonzalez alleges that the Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution by providing false statements in, and omitting material facts from, their affidavits in support of the warrants for the search of his wife's and girlfriend's residences and the seizure of various items therein. *Id.* at 3. The searches of the residences and the evidence uncovered led to Gonzalez's state convictions[1] for sale

---

[1] Criminal Case Detail for *State v. Gonzalez* No. MMX-CR17-0211981-T (Conn. Super. Ct. Oct. 3, 2018), STATE OF CT JUDICIAL BRANCH, http://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Disp.

1

of narcotics by a non-drug dependent person,[2] criminal possession of a pistol or revolver,[3] and risk of injury to a child.[4] Gonzalez has appealed his convictions in state court, and the appeal remains pending.[5]

On June 25, 2019, this Court issued its Initial Review Order pursuant to 28 U.S.C. § 1915A, dismissing Gonzalez's Eighth Amendment claim with prejudice because (1) he was not a prisoner at the time of the alleged deprivation, (2) the allegations did not give rise to a plausible Eighth Amendment claim, and (3) any further attempt to amend the claim would be futile. Doc. 8 ("IRO") 15-16, 19. Although the Court concluded that Gonzalez's Fourth and Fourteenth Amendment claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), it gave him one opportunity to amend his complaint if he can "plausibly allege that his conviction has been overturned, expunged, or otherwise invalidated, or that the evidence collected from the challenged search was not necessary to his conviction." *See* IRO at 20.

On July 19, 2019, Gonzalez filed an Amended Complaint, abandoning his Eighth Amendment claim but stating additional allegations and arguments in support of his Fourth and Fourteenth Amendment claims. Doc. 9 ("Am. Compl."). For the following reasons, the Amended Complaint is dismissed with prejudice.

---

[2] Conn. Gen. Stat. § 21a-278(b).

[3] Conn. Gen. Stat. § 53a-217c.

[4] Conn. Gen. Stat. § 53-21(a)(1).

[5] Supreme and Appellate Court Case Detail for *State v. Gonzalez*, No. AC 42617, STATE OF CONNECTICUT JUDICIAL BRANCH, http://appellateinquiry.jud.ct.gov/AppealNoInq.aspx.

# I. STANDARD OF REVIEW[6]

The Court must dismiss a complaint "in which a prisoner seeks redress from a governmental entity[,] or officer or employee of a governmental entity," that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915A(a)-(b); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[6] The Court incorporates this standard of review from its Initial Review Order. *See* IRO at 1-3.

3

*Pro se* submissions "are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: A *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded, *id.*

## II.   FACTUAL ALLEGATIONS

The factual allegations contained in the Amended Complaint are recounted below, recited in the light most favorable to the Plaintiff.

Defendants Sergeant George Yepes, Detective Frederick Dirga, Detective Justin Lathrop, and Detective Mark Lemieux are all employees of the Middletown Police Department in Middletown, Connecticut. Am. Compl. at 12. Defendants Dirga and Lathrop submitted two affidavits[7] on April 27, 2017 and May 30, 2017 in support of an application for a search and seizure

---

[7] Gonzalez has attached only one affidavit to his Amended Complaint, dated May 30, 2017, and signed by Dirga and Lathrop. Am. Compl. at 35-40.

4

warrant to be executed at the Middletown apartment of Gonzalez's wife, Courtney Gonzalez, and the Meriden apartment of his ex-girlfriend, Baughnita Leary. *Id.* at 12, 35. Defendants Dirga and Lathrop also applied for a warrant to search a UHaul storage unit in Middletown[8] and for a tracking device to be placed on Courtney Gonzalez's car. *Id.* at 12, 35, 37-38. In the affidavit, Dirga and Lathrop claimed that Gonzalez had been the subject of a narcotics investigation over the course of several months and that they had arranged for two confidential informants ("CIs") to purchase cocaine from Gonzalez at both locations. *Id.* at 12-13, 35-38. The affidavit also stated that the CIs had communicated with Gonzalez via a cellular phone that Gonzalez had provided them. *Id.* at 12-13, 36. The Defendants never field tested the substances purchased by the CIs to determine whether it was, in fact, cocaine.[9] *Id.* at 13-14.

Defendants Dirga and Lathrop omitted several facts from their affidavits. They failed to mention how much money they had given to the CIs, how much cocaine was purchased, or whether they had recorded any phone conversations between the CIs and Gonzalez. Am. Compl. at 13. Gonzalez also contends that the controlled purchases never occurred, and the CIs do not exist. *Id.* The Defendants' affirmations that they used CIs to make controlled purchases of cocaine from Gonzalez were false, and such "false statements were necessary for a finding of probable cause to the issuing judge, in order to obtain the search and seizure warrants for" the Middletown and Meriden apartments. *Id.* at 12-13. They also falsely stated that Gonzalez was the president of a local outlaw motorcycle club known as the "Dog Pound Rydaz," which was affiliated with the "Hells

---

[8] The plan to search the UHaul storage unit is not memorialized in the one affidavit attached to the Amended Complaint.

[9] This allegation is contradicted by the attached affidavit, which states that the substances were, in fact, field tested and showed a positive reaction for cocaine. Am. Compl. at 36-40.

Angels," "Ruthless for Life," and other outlaw gangs in the area. *Id.* at 17, 35. Gonzalez's pre-sentence investigation report later stated that this claim was untrue. *Id.* at 17. Finally, the Defendants falsely stated that a canine had "made a hit" for the presence of narcotics at a UHaul storage facility in Middletown,[10] which Gonzalez believes was a ruse to seize his motorcycle. *Id.* at 15.

On May 31, 2017, the Defendants executed a search and seizure warrant at the two locations. Am. Compl. at 14. No narcotics were found at the Leary residence in Meriden. *Id.* When the Defendants arrived at Courtney Gonzalez's apartment in Middletown, they searched for more than one hour without finding any narcotic substances until they decided to bring in a canine unit. *Id.* One officer said to the canine, "If you don't find nothing, you ain't getting no treat." *Id.* The canine handler then entered Courtney Gonzalez's bedroom, which had already been searched and, within mere seconds, found 3.6 grams of cocaine in a dresser. *Id.* Gonzalez contends that the Defendants had planted the cocaine for the canine to find. *Id.* at 14-15. The Defendants also found a digital scale in the communal basement of the apartment building, which did not belong to the Gonzalez family.[11] *Id.* at 15.

During Gonzalez's criminal trial, the state never presented testimony from the CIs or any evidence to prove they existed. Am. Compl. at 13. The trial court denied (1) Gonzalez's motion for the state to produce a toxicologist report on the substances allegedly purchased by the CIs, (2) a

---

[10] *See supra* note 7.

[11] In his initial Complaint, Gonzalez also alleged that the Defendants claimed to have found a loaded Taurus .38 Special revolver in a storage container among his other personal items, but the revolver was not loaded and was a gift to his wife from her uncle. Compl. at 8-9. According to Gonzalez, the Defendants also claimed to have found "drug baggies" in the apartment, which was false. *Id.* at 9.

6

hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the Defendants' statements in the warrant application, (3) Gonzalez's motion for a bill of particulars "to inform [him] on specific occurrences intended to be investigated [at] the trial and to limit the course of the evidence to the particular scope of the inquiry," (4) Gonzalez's motion to compel production of the police reports and other investigatory materials, (5) Gonzalez's motion for discovery and inspection, and (6) Gonzalez's oral motion for a continuance to procure the appearance of Sergeant Yepes, whom he had subpoenaed to testify. *Id.* at 14-16.

Gonzalez contends that the Defendants' false statements in the warrant application, investigation, and search were retaliation for a verbal altercation with Dirga in 2016. Am. Compl. at 17. While at Middletown's "Motorcycle Mania 2016," Gonzalez insulted Dirga and refused a handshake or "fist bump." *Id.* In response, Dirga said to Gonzalez, "I'm going to get you!" *Id.* Other individuals witnessed the altercation. *Id.*

### III. ANALYSIS

In its Initial Review Order, this Court concluded that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) foreclosed Plaintiff's right to relief on his Fourth and Fourteenth Amendment claims as pleaded. However, Plaintiff was given leave to amend his pleadings to "plausibly allege that his conviction has been overturned, expunged, or otherwise invalidated, or that the evidence collected from the challenged search was not necessary to his conviction." Doc. 8 at 20.

In *Heck*, the Supreme Court held that a cause of action under § 1983 is not cognizable where a judgment in favor of a plaintiff would necessarily implicate the validity of his conviction or length of sentence, unless the plaintiff can show that his underlying "conviction or sentence had been

reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a federal writ of habeas corpus." *Id.* at 487. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). The Supreme Court recognized, however, that a § 1983 claim for an unreasonable search may nevertheless be reviewable if a ruling in the claimant's favor does not necessarily imply that his conviction is unlawful. *Heck*, 512 U.S. at 487 n.7; *see also McKitchen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007). Doctrines like independent source, inevitable discovery, or harmless error, for example, may apply such that the evidence supporting the claimant's conviction did not derive solely from the challenged search. In such cases, *Heck* does not deprive the Court of jurisdiction. *See, e.g.*, *Fifield v. Barrancotta*, 353 F. App'x 479, 481 (2d Cir. 2009).

Gonzalez does not allege any facts from which the Court can infer that the evidence collected from the challenged search was not necessary to his conviction. Rather, the majority of additional allegations proffered in the Amended Complaint are brand new claims that the evidence underlying Gonzalez's conviction was fabricated.[12] The primary evidence cited – records of controlled purchases that Gonzalez claims never occurred and statements by confidential informants that Gonzalez alleges do not exist – necessarily underlie Gonzalez's conviction, as they constituted the basis of the magistrate judge's probable cause determination when issuing a search warrant. Any objection to the use or veracity of that evidence must be raised by direct or collateral challenge –

---

[12] Gonzalez also claims that a statement by the Defendants that a canine had "made a hit" for the presence of narcotics at the UHaul storage facility in Middletown was untrue because drugs were never found at the location. Am. Compl. at 12-15. While that specific claim is unlikely to be barred by *Heck* given that no evidence critical to Gonzalez's conviction appears to have been found at the facility, even applying a liberal plausibility standard, the mere fact that drugs were not found at the facility does not lead to an inference that the Defendants intentionally made false statements in their affidavits.

8

not a § 1983 action. Further, Gonzalez's convictions for sale of narcotics, criminal possession of a revolver, and risk of injury to a child – all of which stem from the search on May 31, 2017 – remain valid, and his direct appeal from those convictions remains pending. Therefore, Gonzalez has not and cannot show that his convictions have been invalidated in order to defeat dismissal under *Heck*.

Gonzalez also presents the Court with a laundry list of motions filed by Gonzalez that he alleges were improperly denied by the state trial court in violation of his due process rights. The Defendants in this case are police officers with no role in the adjudication of state court motions. Gonzalez therefore has no due process claim against them stemming from denial of his state court motions.[13] To the extent Gonzalez seeks to suggest that denial of those motions is evidence of coordinated concealment of the allegedly improper searches, his bare allegations, absent any additional evidence, are simply insufficient.

Gonzalez contends "that he is not challenging his conviction[s] [but] is simply demonstrating that . . . the [Defendants] ma[d]e deliberate false [statements] of facts [in] their [search warrant application] and that [he] was denied due process at trial in order to cover-up th[e] unreasonable search and seizure." Am. Compl. at 6. Yet Gonzalez is suing the Defendants for making false statements in the warrant application, which he admits "were necessary for a finding of probable cause" to search the residences, and he does not dispute that the search led to the discovery of evidence giving rise to his convictions for sale of narcotics and criminal possession of a revolver. *Id.* at 12. Even if the *purpose* of Gonzalez's Amended Complaint is not to challenge his convictions,

---

[13] Even if the state, state trial court, or prosecutor were defendants, however, each has absolute immunity from Gonzalez's claims. *See, e.g.*, *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (affirming dismissal of due process claims against the state, the state trial court, and the state prosecutor because each was entitled to absolute immunity).

9

if this Court were to rule in his favor, it would necessarily invalidate certain pieces of evidence and/or procedural decisions critical to securing his conviction. Under *Heck*, this Court lacks jurisdiction to consider such a challenge.

Gonzalez also cites *Nelson v. Campbell*, 541 U.S. 637, 647 (2004), in support of his position that his § 1983 action would not necessarily imply the validity of his convictions. *See* Am. Compl. at 16-17. In *Nelson*, the Supreme Court held that a § 1983 action was an appropriate vehicle for a prisoner to challenge the procedure used for his lethal injection execution. Gonzalez relies on dicta from that case where the Court referenced its previous holding in *Heck* and recognized the ability of a prisoner to challenge the lawfulness of a search pursuant to § 1983 if success on the merits would not necessarily imply the invalidity of his conviction(s). *See* Am. Compl. at 16-17; *Nelson*, 541 U.S. at 647. Gonzalez's brief gives an accurate account of *Nelson*, but does not assist his substantive position as to the effect of *Heck* upon this case. Gonzalez does not contend that the doctrines of independent source, inevitable discovery, or harmless error apply in the instant case, nor does he allege that the evidence uncovered during the May 31, 2017 search was not used during his criminal trial. *See Henry v. Purvis*, 111 F. App'x 622, 623-24 (2d Cir. 2004) (claims that defendants lied to obtain search warrant, planted evidence, and destroyed other evidence properly dismissed under *Heck* where plaintiff's criminal proceeding was pending on appeal). To the contrary, the allegations in the Amended Complaint and the attached exhibits all support the conclusion that Gonzalez's convictions stemmed from the Defendants' statements in their affidavits for the search warrant application and the search that was conducted thereafter. Therefore, Gonzalez

has not shown in his Amended Complaint that this Court has jurisdiction over his Fourth and Fourteenth Amendment claims in light of the Supreme Court's holding in *Heck*.[14]

## IV. CONCLUSION AND ORDERS

Based on the foregoing, the Amended Complaint is dismissed with prejudice. The Clerk is directed to close this case.

It is **SO ORDERED**.

Dated: September 9, 2019
      New Haven, Connecticut

                                            */s/ Charles S. Haight, Jr.*
                                            CHARLES S. HAIGHT, JR.
                                            Senior United States District Judge

---

[14] The remaining additional allegations in the Amended Complaint suggest that the Defendants' false statements and fabrication of evidence were retaliation for a verbal altercation with Dirga in 2016, during which Dirga told Gonzalez "I'm going to get you!" Am. Compl. at 17. These allegations, while perhaps probative on the substance of Gonzalez's claims, have no bearing on the Court's *jurisdiction* to hear his claims in the first instance. They are also insufficient to support an independent retaliation claim.